No. 6327.

MARY L. HARRISON ET AL. v. M. J. MCMURRAY ET AL.

1. VOID—VOIDABLE JUDGMENT.—After the death of the plaintiff in an ac-
tion of trespass to try title and before his heirs or legal representatives
were made parties the suit was dismissed, *held* that such order was
voidable against his heirs, etc., upon a motion or proceeding to rein-
state the case within a reasonable time after such dismissal.
2. CASE LIMITED.—Armstrong v. Nixon, 16 Texas, 610, limited so far as the
opinion declares such order void. Other cases on the subject followed.
(Weaver v. Shaw, 5 Texas, 286; Milam County v. Robertson; Giddings
v. Steele, 28 Texas, 756, and Taylor v. Snow, 47 Texas, 464.)
3. LIMITATION—FORMER SUIT.—Such suit not having been prosecuted to
judgment did not suspend the statutes of limitations when pleaded in
another suit by the heirs.
4. PRESUMPTION OF DUTY.—A duly acknowledged deed was delivered to
the county clerk for record with the fee to pay for recording it. Soon
thereafter the court house, with the records, including the land records
and the deed, were destroyed. Upon these facts it is presumed the
clerk did his duty and that the deed was duly recorded.
5. LIMITATION OF FIVE YEARS.—Quære, whether the registry of a deed
as basis for defense of limitation of five years can be proved by circum-
stantial evidence, the record and deed being destroyed; the defense of
ten years adverse possession rendering the issue immaterial.
6. POWER TO SELL—ANCIENT INSTRUMENT.—A power to sell land may be
presumed from great lapse of time with circumstances supporting it,
in analogy with the presumption of the execution of ancient instru-
ments from lapse of time.
7. CASES FOLLOWED.—Watrous v. McGrew, 16 Texas, 513, followed; Texas
cases collected upon the subject.
8. RATIFICATION OF SALE OF LAND.—Renick & Cassidy recovered lands in
Texas for Harrison, who lived in Kentucky. They had a power to sell
for cash and to retain half the money realized. They sold on credit,
taking vendor's lien notes, for one-half to H. and one-half to themselves
(R. & C.). H. died before the sale but had conveyed the land to his
son. The son settled with R. & C., taking the purchase money notes,
which were made payable to H. He afterwards collected the money.
*Held*, that the transactions subsequent to the sale ratified it, as well
the want of authority as the variance from the power in the sale on
credit.
9. VENDOR'S LIEN.—Subsequent to the filing of this suit by the heirs of
the vendee of H. for the land, R. & C., by a quit claim deed, released their
claim in the land to the plaintiff. *Held*, that R. & C. only had a lien to

secure their purchase money notes, and neither legal or equitable title, and their release was properly excluded when offered in evidence.

10. PAYMENT OF TAXES IN LIMITATION OF FIVE YEARS.—The possessor, under a junior grant, who pays taxes upon the land in litigation under assessment in name of the junior grant is not deprived of the benefit of such payment by reason of his not paying in the name of the senior grant. The description of the land is good upon either grant.

APPEAL from Hill. Tried below before the Hon. J. M. Hall.

January 31, 1885, the appellants, the widow and children of John O. Harrison, brought suit as his heirs for a twelve hundred and eighty acre tract of land patented in 1852 to Charles L. Harrison, the vendor of John O. Harrison, against Mrs. M. J. McMurray, J. R. Harrington and J. E. Wilson and against Mrs. S. A. George and her children and against J. H. Sears and Samuel Cassiday.

The defendants, McMurray, Harrington and Wilson, claim parts of a tract eight hundred and thirteen and one-half varas in width off the west or northwest side of the Harrison survey (which is square in shape), conveyed April 12, 1856, by deed purporting to have been made by John Thomas Lee for C. L. Harrison for locative interest. This deed was acknowledged August 12, and recorded August 16, 1856, in Navarro county, Texas. Mitchell conveyed to Doyle by deed May 28, 1857, recorded May 7, 1860. Doyle deeded thirty acres off the lower or south end to Rodman, May 28, 1857, and Rodman, December 3, 1865, conveyed the thirty acres to defendant Harrington. Doyle deeded two hundred and two and one half acres, being the north or upper part of said Mitchell tract, to Joseph Wilson, under whom defendant Wilson holds the same tract.

September 12, 1865, Doyle made a title bond to William McMurray, whose widow is the defendant, for one hundred and eighty acres, being the lower half of the tract less the Rodman thirty acres. Doyle died and Mrs. Mary A. Doyle and L. J. Huffman administered on his estate, and at August term, 1879, of probate court of Hill county an order was made "that the administrator of the estate of J. W. P. Doyle make title to the heirs of William McMurray to the land described in the bond filed in this court." October —, 1869, deed was made by Mary A. Doyle, administratrix, etc., for the land to defendant, Mrs. McMurray, reciting the full payment of the purchase

money.  It was in evidence that the defendant McMurray had resided upon the land and claiming it continuously since December, 1865, save a few months while she was absent to "school her children," during which time she left a tenant. She had buildings and a field of from twenty to twenty-five acres in cultivation.

Harrington had used and hauled timber for fire wood and other purposes from his thirty acres ever since 1865.  Defendant Wilson proved payment of taxes on his two hundred and two acres, the hauling of timber from it for ten years, continued assertion of ownership.

The defendant, Mrs. George, showed possession of one hundred and sixty acres of the twelve hundred and eighty acre tract sued for, being the west half of the John Crenshaw three hundred and twenty acres.  By survey the conflict with the Harrison survey is shown.  She proved continuous adverse possession for over twenty years.  She also proved the existence and contents of a deed to her husband, made about October 10, 1866, by Lewis Thomas and wife for the west half of the three hundred and twenty acres; also the privy acknowledgment of Mrs. Thomas to the deed.  It was shown that in 1871 or 1872 defendant, Mrs. George, in Hillsboro, handed the deed to Charles Warren with request that he have it recorded. Warren testified that he thinks in 1872 he received a deed from her and that he did as asked and filed the deed for record, and paid the recording fees.  The court house subsequently was burned, and its contents, records, etc., destroyed.  The defendant George made affidavit to the contents of the deed and its loss.  She also testified on the stand and was cross examined. She proved payment of taxes on the land for the years 1880, 1881, 1882, 1883 and 1884.  Her husband died in 1866, and she had resided upon the land ever since.  The rendition and payment of taxes was upon the land as part of the John Crenshaw survey.

The defendants McMurray and George, in addition to pleading not guilty, pleaded limitation of five and ten years.  Harrington and Wilson pleading not guilty.

The defendant Sears also pleaded not guilty, and exhibited a conveyance by Charles L. Harrison, by W. A. Cassiday, agent and attorney in fact, to John F. Barnes for two hundred and seventy-four acres, of date December 15, 1875, also signed by Renick and Cassiday.  The consideration for the deed was five

hundred and forty-eight dollars gold, to be paid as follows:
One note for one hundred and thirty-seven dollars, payable on
or before December 1, 1876, to order of Charles L. Harrison;
and one note for same amount, payable same date to order of
Renick and Cassiday; one note for one hundred and thirty-
seven dollars, payable December 1, 1877, to order of Charles L.
Harrison; and one note same date and amount, payable at
same time to order of Renick and Cassiday, each of the notes
retaining a lien upon the two hundred and seventy-four acres.
There is some obscurity in the relations between W. L. Harri-
son with Renick and Cassiday. But the testimony in the record
is undisputed that whatever may be the defects in the power,
still John O. Harrison sanctioned the sale by receiving the pro-
ceeds of the two notes made payable to the order of his father
and vendor, Charles L. Harrison. It was in evidence, for their
services Renick and Cassiday were to have half interest in the
proceeds of sales of such lands as they should recover for
Charles L. Harrison.

To avoid the pleas of limitation plaintiffs, in rebuttal, read
the record of an action to try title in the district court of Hill
county, filed March 31, 1875, by Charles L. Harrison against S.
A. George, Martha McMurray and J. E. Wilson for the land in
controversy. The minutes of the court showed continuances
from term to term until December, 1879, when it was dismissed
for want of prosecution by judgment of said court, on motion
of the defendants.

In rebuttal to the case made by defendant Sears, the plaintiffs
offered to prove, first, that the two notes by Barnes to Renick
and Cassiday had never been paid; second, agreements show-
ing that on May 19, 1879, Renick "has this day sold unto Cas-
siday all his right, title, interest and claim in and to all part-
nership lands of Renick and Cassiday;" third, deed from W.
A. Cassiday to Samuel Cassiday conveying all grantee's right,
title and claim and interest in and to all lands and scrip, land
warrants, locations and contracts of all sorts owned by grantor
August 27, 1879; fourth, power of attorney by Samuel Cassiday to
Anderson & Flint to sell and convey all right, title, interest and
claim he had under former deed; fifth, deed from Samuel Cas-
siday by John T. Flint, attorney in fact, to plaintiffs, dated Sep-
tember 30, 1885, conveying to them all the right, title and inter-
est of grantor in the twelve hundred and eighty acres sued for;
sixth, it appeared that Samuel Cassiday was defendant in

Opinion of the court.

the suit, had pleaded not guilty, but did not appear by counsel at trial, nor was his plea read. To the testimony the defendant Sears objected, and it was excluded, because the deed was made after suit had been instituted, and the title, if any, was acquired since the filing of the suit. The court adds to the bill the further reasons for his action, the vendors had parted with their title and had only a vendor's lien upon the land, they could not convey by deed a legal title to the land, but only such interest as they possessed; that is an equitable interest and not a legal title.

The verdict was for defendant McMurray under deeds introduced by her and by statute of limitations of ten years; for J. R. Harrington and J. E. Wilson under deeds introduced by them; for Harrington, thirty acres; for Wilson, two hundred and two and a half acres; for defendant, Mrs. S. A. George, one hundred and sixty acres of land under five and ten years statute of limitations, and for defendant, J. H. Sears, two hundred and seventy four acres.

*Jo. Abbott* and *Tarleton & Jordan*, for appellants: Cited 1 Greenleaf's Evidence (14 ed.), 15, 269, 21; Keyes v. Houston & Great Northern R. R. Co., 50 Texas, 170; Armstrong v. Nixon, 16 Texas, 616; Payne v. Benham, 16 Texas, 365; Grigsby v. Peak, 57 Texas, 142; Peyton v. Barton, 53 Texas, 298; Bunton v. Cardwell, 53 Texas, 408.

*S. C. Upshaw*, for appellee: Cited Watrous v. McGrew, 16 Texas, 514; Daily v. Starr, 26 Texas, 564; Hooper v. Hall, 35 Texas, 87; Sypert v. McCowan, 28 Texas, 677; McBee v. Johnson, 45 Texas, 634; Davis v. Touchstone, 45 Texas, 491; Hurley v. Barnard, 48 Texas, 83; Farris v. Gilbert, 50 Texas, 350; Peterson v. Lowry, 48 Texas, 408; Mills v. Herndon, 60 Texas, 353; Throckmorton v. Price, 28 Texas, 605; Kinney v. Vinson, 32 Texas, 127; Burleson v. Burleson, 28 Texas, 412; Teal v. Terrell, 48 Texas, 491; Story on Agency, section 244.

WALKER, ASSOCIATE JUSTICE. Upon the effect of the suit by C. L. Harrison, brought March 31, 1875, upon the defense of limitations, we are referred to Armstrong v. Nixon, 16 Texas, 610. This was an appeal from the refusal of the district court to allow Armstrong, the administrator of Whitman, the original plaintiff, to be made party, and o reinstate the case. The

application was made at the next term after the order of dismissal, which was entered October, 1854. Whitman had died February 24, 1854. On appeal by the administrator the judgment was reversed, and the order of dismissal declared a nullity. The opinion further states that "where the plaintiff dies before verdict the suit does not abate until failure to prosecute on scire facias issued by the defendant."

Against the application of this rule to the case before us this court has held, " that an application to the district court to set aside a void judgment and proceed with the case comes too late, unless made within the time allowed for a bill of review." (Weaver v. Shaw, 5 Texas, 286), cited with approval in 47 Texas, 239, Milam County v. Robertson. Besides, in numerous cases our courts have held that such judgments (against a defendant who had died before verdict) are "not void but only voidable, and can be set aside by a proceeding *coram nobis,* that is by proceedings in the same court where rendered, showing the fact of the death at rendition of the judgment." (28 Texas, 756, Giddings v. Steele; 47 Texas, 464, Taylor v. Snow, and cases cited.) In this case the plaintiff died September 24, 1878; the case was dismissed December, 1879. He had conveyed the land to his son John O. Harrison, December 14, 1875, and the deed was recorded April 15, 1877.

No application was ever made by the representatives of the plaintiff or by John O. Harrison, to set aside the order of dismissal. A new suit was brought March 31, 1885. Under these facts it is held, under authority of our own courts, that the order of dismissal as against the plaintiffs is final and valid. It follows then, that as the suit was not prosecuted to effect, it did not have the effect of stopping the running of the Statute ·of Limitations. (22 Texas, 198, Shields v. Boone; 23 Texas, 169, Chambers v. Shaw; 25 Texas, 366, Hughes v. Lane; 58 Texas, 20, Connolly v. Hammond.)

Upon her defense of limitations, Mrs. George recovered upon the five years and ten years statute. As the testimony to her continuous adverse possession is satisfactory and undisputed, it does not become necessary to discuss the questions raised in the record upon the effect of the testimony introduced in support of her plea of five years. The execution and contents of the deed to her husband for the west half of the Crenshaw three hundred and twenty acres survey were proven. It ·was shown that she had caused the deed to be filed for record

in 1872, in the clerk's office, and had the recording fee paid. The presumption is that the clerk did his duty and recorded the deed. (Lawson's Presumptive Ev., p. 53 and note.) The court house and records had been burnt, and presumably her deed. Whether the filing, which for some purposes is equivalent to the actual record, is sufficient as a basis for the claim under the five years statute of limitations, or whether the testimony be sufficient to establish the registry of the deed by circumstantial evidence, or whether secondary evidence be competent to prove it need not be determined. The jury could not have found against her upon the ten years statute without a total disregard of the testimony. The ten years adverse possession concluded the plaintiff's as to the one hundred and sixty acres so held by defendant, George, and the result would have been the same if all testimony under the claim of five years limitation had been omitted.

The defense of Harrington & Wilson depends alone upon the power of Lee as attorney in fact to convey to Mitchell the alleged locative interest of eight hundred and thirteen varas in width off one side of the one thousand two hundred and eighty acre tract. The trial was on March 11, 1886. The deed by Lee for C. L. Harrison to Mitchell bore date April 12, 1856, it was duly recorded August 16, 1856. Mitchell sold to Doyle, May 28, 1857. Doyle sold to Murray September 12, 1865, and when Murray moved upon his purchase soon after there were improvements upon it. The entire locative interest has been claimed by Doyle's vendees ever since—Murray and his widow actually residing upon their purchase.

In Watrous v. McGrew, 16 Texas, 513, Judge Wheeler remarks: "A power to execute a deed will, in many cases, be presumed." (2 Cow & Hill's Notes to Phil. on Ev., 812, 813.) In most cases where a deed would be evidence as an ancient deed without proof of its execution the power under which it purports to have been executed will be presumed. (4 Pick., 162; 1 Hill, 389; 9 Johns, 169.) In Louisiana it has been held that where possession had followed a sale made by an attorney in fact for a period of twenty or more years the authority of the attorney might be presumed. (6 Martin, U. S., 153.) So it has been held that the acquiescence of the principal in possession under the conveyance for nearly twenty years will authorize the presumption that a condition precedent on which the attorney was to convey the land had been fulfilled and that

he had not transcended his power. (4 Mon., 395.) A like pre-sumption has been indulged under particular circumstances where possession had not followed the deed and considerably less than twenty years had elapsed after its execution by the attorney." (Forman v. Crutcher, 2 A. K. Mars., 69.)

This was cited with approval, 26 Texas, 565, Daily v. Starr, followed in 34 Texas, 90, and 35 Texas, 87. Again, in 41 Texas, 434, Justice Devine recognizes the authority in principle of Watrous v. McGrew, and applies it as authority to the facts of that case. In 48 Texas, 552, Veremendi v. Hutchins, Jus-tice Gould cites the full paragraph above, and by analogy sug-gests that community debts might be presumed from lapse of time as a foundation for the power of the surviving husband in selling community property. The principle is again recog-nized by Chief Justice Moore in 49 Texas, 600, Williams v. Con-ger, as by Justice Bonner in 50 Texas, 534, Johnson v. Tim-mons; and in 56 Texas, 420, Veremendi v. Hutchins, by Judge Watts of the Commission of Appeals with approval of the Su-preme Court. (See also Lawson's Presumptive Ev., 419; 3 La. Ann., 230; 20 Cal., 580; 32 N. H., 266.)

The trial judge gave the charge following: "No power of at-torney has been read in evidence but it has been alleged by af-fidavit that said power of attorney, if any such there was, has been lost or destroyed. You will look to all the evidence before you to ascertain whether said C. L. Harrison ever executed and delivered such power of attorney, if any, to said Lee to sell the land described in the aforesaid deed, and you may consider the date of the deed, the time of its acknowledgment, as well as the time of the record of the same, the use, occupation, pos-session, claims of ownership, if any such there were, by the said defendants, * * and the claim of plaintiffs and their an-cestors, Charles L. and John O. Harrison, to said land such as may be shown by any patent and deeds introduced in evidence, together with any other evidence tending to show that said power of attorney, if any was or was not executed by said C. L. Harrison to said Lee; and if the preponderance of the evi-dence tends to show that said power of attorney was so exe-cuted and delivered to said Lee, then you may presume that said Charles L. Harrison did execute and deliver a power of attorney to said Lee to sell the said five hundred and five acres described in the deed from Harrison to Mitchell. And if

you so find then you are instructed that said deed is sufficient to divest all the right, title and interest Harrison had in the land and to vest it in said Mitchell."

This charge is an application of the principle announced in Watrous v. McGrew, and repeated in the cases following, which have been cited, that prove from great lapse of time and the circumstances attending the title sought to be validated, the jury may, if satisfied of its existence, find the fact of the existence of such power. It seems that after thirty years the presumption becomes one of law as an ancient document. It should not require authority to reach the conclusion that if a power can be inferred or presumed as a fact from possession under it, and other circumstances such as its recitals, publicity of claim, etc., occupancy for a less period than thirty years, that in this case, where less than five weeks were wanting of the full thirty years, the verdict should be conclusive. The charge was sanctioned by authority and the verdict supported by the testimony. The validity of the conveyance to Mitchell being established, it concludes the litigation against the defendant McMurray; and it is of no consequence whether the deed from the administration of Doyle was sufficient to pass the legal title. The order of the probate court directed that the deed be made to McMurray in accordance with the bond for title made by the deceased. The deed from the administratrix recited the full payment of the purchase money. These would constitute an equitable title, although the administrator and administratrix both should have joined in the execution of the deed.

Evidently the mesne conveyances from Mitchell down to the defendant McMurray are of little importance to the final result reached. In finding the existence of the power in Lee to convey the locative interest to Mitchell, the right of the plaintiffs was concluded. And upon the verdict upon the defense of ten years adverse possession the deed to defendant McMurray was useful only as defining the boundaries limiting her possession, and to which the actual occupancy of her field and house by construction extended.

The judgment in favor of the defendant Sears depends upon the legal effect of the deed from C. L. Harrison to Barnes, vendor of Sears, made by W. A. Cassiday, attorney in fact, December 15, 1875. It is in evidence that C. L. Harrison empowered Renick & Cassiday to recover his Texas lands; that by contract Renick & Cassiday were entitled to one-half of

the proceeds of sale of lands recovered, and which Harrison should order to be sold, or they might have their half conveyed to themselves. The power made September 14, 1875, by C. L. Harrison to Renick & Cassiday authorizing them, or either, to sell this Harrison survey, is sufficiently proved. W. A. Cassiday was not a party to this suit, nor is his interest in it apparent. He was, therefore, a competent witness to declarations by Harrison to him. The loss of the power of attorney was shown, and search for it. Cassiday's testimony to the contents and execution of it was competent, and in connection with the imperfect record of it, was satisfactory. Besides this, it is undisputed that the purchase money to the extent of the one-half evidenced by the two purchase money notes made by Barnes to C. L. Harrison were in fact collected and received by John O. Harrison, whose heirs are the plaintiffs. They can not recover the land and retain the purchase money thus paid. The testimony showed both the legal and equitable title, only encumbered with the lien for the one-half the purchase money owing upon the notes to Renick and Cassiday.

The court properly excluded the release by Renick to Cassiday; from Cassiday to his brother, Samuel Cassiday; and from the attorneys of Samuel Cassiday to the plaintiff. The reasons given by the trial judge are well taken and satisfactory. The quit claim to plaintiffs bears date eight months after the institution of suit. Renick and Cassiday, upon the sale to Barnes were entitled to half the proceeds—that is, to the two notes taken in their name, reserving the vendor's lien. These notes carried the lien, and aside from this lien Renick and Cassiday, after the sale, held no other interest in the land. Sears on buying from Barnes, took the land subject to the lien.

The superior title in the land may have remained in Harrison, but upon payment of the two notes to Harrison there remained nothing against the title of Sears, but the lien to secure the notes to Renick and Cassiday. The attempted release of title to the land by Sam Cassiday after suit did not pass any right in the land as against Sears, nor against the lien following the notes. The rights of the holders of these notes are not before the court for adjudication.

The deed to Barnes bore date December 15, while the deed to John O. Harrison bore date December 14, 1875. The latter was executed in Kentucky, and was not recorded until 1877. But the vendor, John O. Harrison, in his settlement with his

father's agents (Renick and Cassiday), recognized the sale and received the money from the sale as above stated.

These conclusions dispose of the case. Some matters are urged in the briefs for appellants not directly passed upon. It is insisted that the payment of taxes upon the west half of the Crenshaw three hundred and twenty acre tract could not be such payment upon the Harrison tract as is contenplated by the five years statute of limitations. The actual conflict be· tween the west half of the Crenshaw with the survey claimed by the plaintiffs, is shown by the testimony of the county surveyor. The payment was upon the identical land. As defendant George entered upon the land under the Crenshaw survey, her actual possession of part extended by construction to the lines of her title—there being no actual possession upon the older survey, not limited by specific boundaries.

Whether Renick and Cassiday sold for cash, as their authority required, is not material, when it is shown that their sale on credit was sanctioned by John O. Harrison in taking the notes, and receiving the purchase money upon them. His heirs are bound by his ratification regardless of the terms of the power.

There is no error in the record which could have altered the result of the case. The judgment below is affirmed.

*Affirmed.*

Opinion delivered May 22, 1888.