SWENSON et al. v. MYNAIR et al.[1]

(Circuit Court of Appeals, Fifth Circuit. February 20, 1897.)

No. 546.

1. DEEDS—MISDESCRIPTION.
The fact that a deed erroneously describes the land conveyed as part of a certain grant does not render it any less a deed to the land therein otherwise unmistakably described.

2. TRESPASS TO TRY TITLE—PROOF OF PAYMENT OF TAXES.
Under Rev. St. Tex. 1895, art. 3342, to sustain a plea of limitation in an action of trespass to try title to land, it is not necessary to prove the payment of taxes by the production or help of tax receipts or of the assessment roll; but it may be done by the testimony of one who knows the fact, or by circumstantial evidence; and it is not necessary that the rendition for taxes should be made by, or even in the name of, the one claiming under the statute, and a mistake in the name of the original grantee is immaterial.

Maxey, District Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of Texas.

This was an action of trespass to try title, brought by S. M. Swenson against Frank Mynair, E. Tinsley, J. R. Tinsley, T. B. Cox, W. L. Smith, Paul Nemec, and E. H. Dickson. Judgment was rendered for defendants, and, plaintiff having subsequently died, this writ of error was prosecuted by his legal representatives.

D. W. Doom, M. C. H. Park, and T. W. Gregory, for plaintiffs in error.

L. W. Campbell, for defendants in error.

Before PARDEE and McCORMICK, Circuit Judges, and MAXEY, District Judge.

McCORMICK, Circuit Judge. S. M. Swenson, a citizen of New York, brought this action February 18, 1895, against Frank Mynair, E. Tinsley, J. R. Tinsley, T. B. Cox, W. L. Smith, Paul Nemec, and E. H. Dickson. It is the Texas real action of trespass to try title. The petition is in the statutory form. The defendants, in addition to the general issue, presented pleas under the statute of five years' limitation. On the trial the judge charged the jury that the plaintiff had shown title to the land in controversy, but that the defendants had established their pleas of limitation, and directed a verdict to be returned for the defendants. On this verdict judgment was entered May 13, 1896, that plaintiff take nothing, and that defendants have judgment and execution for their costs. S. M. Swenson, the plaintiff, died June 13, 1896, and his legal representatives prosecute this writ of error. They concede that the defendants had actual adverse possession of the land in controversy for more than five years prior to the institution of the suit, and that during all of this period they claimed the land under deeds duly registered, which described the lands by metes and bounds; and the plain-

[1] Rehearing denied April 14, 1897.

tiffs say that the only question here presented and relied on by them is the question of the payment by the defendants of the taxes. The land in controversy is a narrow strip, about 540 varas wide, running along the east side of the east boundary line of a large survey called in the record the "University Land." This large survey was located in 1841. The northern half, or two-thirds of its east boundary line, is in the open prairie. At its beginning point, namely, at the northeast corner of the survey, natural objects were scarce in 1857 and 1858. In December, 1857, a number of smaller surveys were located, beginning some distance east of the University survey, and projected successively on, or in connection with, each other towards the large location. One of these was the Rees D. Price survey, the original field notes of which, filed in the land office, show that this survey was made December 15, 1857. April 4, 1870, a resurvey of this location was made, on which patent issued April 15, 1870. The field notes, as corrected by this resurvey, and carried into the patent, are as follows:

"Said survey is situated on the waters of Tehuacana creek, in the N. E. portion of McLennan Co., about 19½ miles N., 15 E., from Waco. Beginning at the N. W. cor. of an 800-acre survey for J. M. Henrie; thence N., 30 W., 264 vrs.; thence S., 60 W., passing the S. E. cor. of McKenny and Williams surveys at 151 vrs., at 979 vrs. the S. W. cor. of same, in all 1,075 vrs., to the east line of the University land; thence S., 30 E., 3,138 vrs., to stake in prairie for corner; thence N., 60 E., at 520 vrs. branch, at 1,075 vrs. a stake in prairie for corner; thence N., 30 W., 2,874 vrs., to beginning."

The land-office map of this section of the country of date December, 1868, shows that the Rees D. Price survey overlaps the University survey at its northeast corner, and throughout the whole length of the Price survey. A land-office map of the same section dated May, 1877, shows a vacancy between the Price survey and the University survey. On April 20, 1881, a patent was issued to the heirs of Gideon Pace, embracing the vacancy apparent on the map of 1877, including the land in controversy in this suit. The survey for the Gideon Pace location was made August 3, 4, and 5, 1874, and the field notes filed in the land office October 20, 1874. In making the survey of the University land in 1841 the northeast corner was not marked or witnessed by natural or artificial objects, and, if the east boundary line was run on the ground, the steps of the surveyor could not be found in 1858. In that year, Thomas J. Oliver, then a surveyor of the Robertson land district, subdivided the University survey into sections, in the course of which work he established and marked the northeast and the southwest corners of that survey, run and marked the east boundary line so that its place on the ground has been substantially recognized ever since that, and as then located and marked by him is now known and respected. On March 17, 1885, E. E. McDaniel, admitted to have been at that time the owner of the whole of the Rees D. Price survey, sold and conveyed to T. B. Cox, one of the defendants, the land in controversy, which the deed described as a part of the Rees D. Price grant, with metes and bounds, beginning at the northeast corner of the University land, and running with its east boundary line 3,138 varas to a stake for the southwest corner of the tract

thereby conveyed to Cox, with other calls to include all the land here in controversy. On the 10th of August, 1885, Cox conveyed an undivided one-third interest in the same tract of land to W. M. Walston, describing it with the same metes and bounds, identically, as were set out in the deed from McDaniel to Cox. These deeds were filed for record in the proper office August 26, 1885. The other defendants, respectively, hold under deeds from Cox or Walston, in all of which deeds to and from Cox and Walston the description above set out is preserved, with the recitation that the land is a part of the Rees D. Price survey.

The proof was full that the parties had paid the state and county taxes on this land regularly during all the time of their occupancy, the land rendered being shown on the assessment roll as "abstract No. 711; certificate No. 4/93; original grantee, R. D. Price"; and the receipt for the taxes given the defendants by the collector describe the land as so many acres, "abstract No. 711; certificate No. 4/93; original grantee, R. D. Price." The Gideon Pace survey, under which the plaintiff claimed, was abstract No. 702, certificate No. 30/165. The plaintiffs contend that, as the judge instructed the jury that the R. D. Price survey did not include the land in controversy in this suit, the payment of taxes as shown above cannot be held to have been made on the land which the defendants occupied, and which was clearly described in their duly-recorded deeds. The possession requisite to support these pleas is defined in the statute to be the "peaceable adverse possession of land, cultivating, using, or enjoying the same, and paying taxes thereon, if any, and claiming under a deed or deeds duly registered." Rev. St. Tex. 1895, art. 3342. The deeds in this case describing the land as a part of the Price grant does not make it so, nor does such description render the instrument any less a deed to the land therein otherwise unmistakably described. Udell v. Peak, 70 Tex. 547, 7 S. W. 786. It is settled that the payment of taxes may be proved by the testimony of one who knows the fact, or by circumstantial evidence, and without the production or help of tax receipts or of the assessment roll. The state revenue laws provide that land rendered for taxes shall be described by the number of acres, the abstract number of the survey, the number of the certificate, and the name of the original grantee. It is also provided that the list of one's property returned to the assessor for taxation shall be verified by the oath of the person making the return. The common conscience, as well as the most enlightened equity, forbids that any one should make oath to what he does not know, or have reasonable ground to believe, to be true; and both the common conscience and enlightened equity abhor the affiant whose oath is contradicted by his daily conduct and professions. These defendants, therefore, could not return the lands for taxes otherwise than as they did. Suppose they had returned it as so many acres, "abstract No. 30/165, original grantee, Gideon Pace," besides thereby denouncing themselves as patent swindlers, and proving it by their own oath, such rendition, and the record thereby made, would be variant from their deeds. McCurdy v. Locker, 2 Tex. Civ. App. 220, 20 S. W. 1109. The stat-

ute prescribing the five-year limitation says nothing about the assessment, or the form of the assessment roll, or of the collector's receipt for taxes. It is not necessary that the rendition should be made by, or even in the name of, the one claiming under this statute. Cantegrel v. Von Lupin, 58 Tex. 570.

The statement we have made of this case, construing the record with our utmost care, brings it within the letter and equity of the statute. Harrison v. McMurray, 71 Tex. 122, 8 S. W. 612. The later Texas cases do not overrule or question the authority of the cases we have cited, and, if they did, this court might well follow the earlier cases which are consonant with justice and sound reason. The judgment of the circuit court is affirmed.

MAXEY, District Judge, dissents.