## J. S. HUTCHINS *et al. v.* R. B. WILSON *et al.*

### (*Knoxville.* September Term, 1918.)

1. **COURTS. Appellate jurisdiction. Tennessee.**

   Where the principal purpose of a bill is a recovery of a money judgment in excess of $1,000, an appeal will lie direct to the supreme court; but, if it have some other principal purpose, an appeal will lie only to the court of appeals, notwithstanding an incidental prayer for recovery of a money judgment in excess of $1,000. (*Post, p.* 301.)

   Case cited and approved: Morris v. Railroad, 124 Tenn., 524.

   Cases cited and distinguished: Singer v. Singer, 122 Tenn., 671; Railroad v. Byrne, 119 Tenn., 278.

2. **COURTS. Appellate jurisdiction. Tennessee. Appeal from decree upon creditors' bill.**

   The main purpose of a creditors' suit is not to obtain a money judgment, but to impound property, enjoin the proceedings in which property has been attached, and adjudicate the interests of all claimants as to their priority rights, and appoint a receiver for preservation of property, and the appellate jurisdiction thereof lies in the court of civil appeals. (*Post, pp.* 301-303.)

3. **COURTS. Jurisdiction. Tennessee. Statutes.**

   Acts 1907, chapter 82, creating the court of civil appeals, confers upon it appellate jurisdiction in all civil cases from the law and equity courts, with certain named exceptions, and the supreme court cannot assert jurisdiction unless a particular case falls clearly within one of the exceptions enumerated. (*Post, pp.* 303, 304.)

   Acts cited and construed: Acts 1907, ch. 82.

   Case cited and distinguished: Burns v. City of Nashville, 132 Tenn., 434.

FROM POLK.

Appeal from the Chancery Court of Polk County.—
HON. FOSS H. MERCER, Chancellor.

J. C. RAMSEY and MAYFIELD & MAYFIELD, for appellant.

J. HARRY SWAN, B. B. C. WITT and THOMPSON &
WILLIAMS, for appellees.

MR. JUSTICE McKINNEY delivered the opinion of the
Court.

This is a general creditor's suit. The bill was filed
on behalf of the complainants and all other creditors
of the defendant R. B. Wilson.

The total indebtedness claimed by the complainants
against the defendant Wilson amounted to about $500.
The bill charged that said defendant was largely in-
debted to other parties, stating names and amounts, and
that several of said creditors had instituted attachment
and injunction suits.

It appears that, subsequent to the creation of these
debts, the defendant had filed a voluntary petition in
bankruptcy and had been discharged; that after such
discharge the father of the defendant, R. B. Wilson,
died, and by his will devised a valuable farm to the
defendant R. B. Wilson, subject to the life estate in
the mother of said defendant, who is a very old woman.

The defendant and his mother sold this farm for
$11,000; $3,500 was for cash, and deferred notes were
executed for the balance. After the delivery of the

deed, but before the money and all of the notes were turned over to the vendors, these various creditors, claiming that the defendant, R. B. Wilson had repeatedly promised to pay their debts after he was discharged in bankruptcy, began filing injunction and attachment suits for the purpose of impounding said property and having it applied to their respective debts. Under this general creditors' bill an order was made, enjoining the further prosecution of these independent suits, and all creditors were required to prosecute their claims in this suit, which they did.

Only two of the creditors had claims amounting to as much as $1,000.

This bill prayed for an attachment, injunction, the appointment of a receiver (which was granted), an accounting with the trustee, through whose hands the money and notes were to pass, a reference to ascertain the amount of the assets of the defendant, the names of the preferred creditors and amounts due them, the priority of liens, the names of the general creditors and the amounts due them, the costs and expenses of the suit, including compensation for the receiver and that of the solicitors, the interest of the mother of the defendant R. B. Wilson in the proceeds derived from the land, etc.

The master made a very full and elaborate report, to which exceptions were filed by the various parties, and these matters were all passed upon by the chancellor, and from his decree certain creditors, whose claims were disallowed, have appealed, and the defendant R. B. Wilson has appealed as to the claims allowed. Said appeals were prayed and allowed to this court.

We are of the opinion that this court is without jurisdiction, and that the appeals should have been taken to the court of civil appeals.

But for the fact that two of the claims exceed $1,000 the case of *Singer* v. *Singer,* 122 Tenn., 671, 126 S. W., 1085, would be conclusive. In that case it was held:

"Where each of several claimants sue individually in an administration suit in chancery for separate sums less than one thousand dollars, but the aggregate of which exceeds that amout, the court of civil appeals, and not the supreme court, has appellate jurisdiction,- although their separate petitions, for convenience and to save expense, were consolidated and heard together in the chancery court."

Most of the authorities cited in the Singer Case were decisions involving the jurisdiction of the supreme court of the United States, and it was held in those cases that it did not have jurisdiction as to claims under $5,000, even though some of the claims involved in the case exceeded $5,000. It is not very clear that jurisdiction was exercised in those cases where some of the claims exceeded the jurisdictional amount, but, assuming that they did, if such holding were applied to a case like the one here involved, the result would be that as to two of these claims the appeal would lie to this court, while as to most of the claims the appeal would go to the court of civil appeals, although it is apparent that it is almost necessary that all of these matters be heard together; and, for reasons hereinafter stated, if any doubt exists as to which court has jurisdiction, the doubt should be resolved in favor of the court of civil appeals.

But we have a different question involved here from that with which the supreme court of the United States was dealing in the cases cited in *Singer* v. *Singer,* supra.

In *Railroad* v. *Byrne,* 119 Tenn., 278, 104 S. W., 460, the court held:

Primary jurisdiction of the court of civil appeals is defined to embrace all cases brought up from courts of equity and chancery courts, except cases seeking money recoveries for more than $1,000, and except cases involving the constitutionality of statutes, election contests, and State revenue and ejectment suits, and to embrace all cases brought up from the circuit and common-law courts, except cases involving the constitutionality of statutes, election contests, State revenue and ejectment suits.

If, therefore, the principal end, or purpose, of the bill was a recovery of a money judgment, then the appeal would lie direct to this court.

In *Morris* v. *Railroad,* 124 Tenn., 524, 137 S. W., 759, and other cases, it was held that an incidental prayer for the recovery of a money judgment, in excess of $1,000, will not confer appellate jurisdiction upon this court, when the main purpose of the suit is to obtain some relief other than a money judgment.

It becomes important, therefore, to determine the purpose and object of a creditors' bill.

A creditors' bill is thus defined in 12 Cyc., 5.

"A creditors' bill has been defined to be a bill by which a creditor seeks to satisfy his debt out of some equitable estate of the debtor which is not liable to levy and sale under execution at law, or out of some prop-

erty which has been put beyond the reach of the ordinary process.''

And in notes to the above text we find the following definitions, which are supported by authority:

''A bill for the discovery of assets, debts owing by third persons and the like.''

''A bill filed for an account of decedent's assets and a settlement of the estate or a bill filed against a fraudulent conveyance.''

''A proceeding to enforce the security of a judgment creditor against the property and interest of his debtor.''

''In their most comprehensive sense they are bills in equity by creditors to enforce payment of debts out of the property of debtors, under circumstances which impede or render impossible the collection of the debts by the ordinary process of execution.''

''The jurisdiction over a creditors' bill is only exercised when the remedy afforded at law is ineffectual to reach the debtor's property, or when the enforcement of the legal remedy is obstructed by some incumbrance or by a transfer which has been made to defeat the creditors' rights.''

From the foregoing authorities, as well as upon reason, it seems that the main purpose of this suit is not to obtain a money judgment, but to impound property, enjoin the proceedings in which the property has been attached, adjudicate the interest of all claimants in the property as to their rights of priority, and appoint a receiver for its preservation. The fixing of the amount due creditors is but one of the incidents of the suit, and cannot be said to be the principal one. It

often happens that the claims of debtors have already been reduced to judgments, in which event the filing of such a bill as this could not be said to be primarily for the purpose of procuring a money judgment, but the principal purpose in such case would be to reach the property before it was dissipated, or made way with, or absorbed by other creditors.

This case is somewhat analogous to a bill filed by a judgment creditor on a *nulla bona* return. In such a case the creditor asks for a money decree, and that the property impounded be applied in satisfaction of such decree, but it is obvious that the prayer for the money judgment is not the primary purpose of the bill, for the creditor already has a money judgment; the main purpose of the bill is to reach trust property. As previously stated, where there is doubt as to the primary object of the bill, the jurisdiction should be held to be in the court of civil appeals.

In *Burns* v. *City of Nashville,* 132 Tenn., 434, 178 S. W., 1054, the court said:

"As stated before, it is difficult to determine what is the paramount object of the litigation. All the matters are of great importance, and it is hard to say that any one could be treated as incidental.

Chapter 82 of the Acts of 1907, creating the court of civil appeals, confers upon that court appellate jurisdiction of all civil cases coming up from the law and equity courts of this State, with certain exceptions named; that is to say, the act gives the court of civil appeals immediate supervision of all civil litigation in the lower courts, unless such litigation is of the particular character excepted by the act.

" 'Where a general rule has been established by statute, with exceptions, the court will not curtail the former nor add to the latter by implication. Exceptions strengthen the force of a general law, and enumerations weaken it as to things not expressed.' Sutherland on Statutory Construction, section 328.

"Applying this rule of construction, inasmuch as general jurisdiction of civil appeals lies in the court of civil appeals, and the jurisdiction of this court exists only in exceptional cases, it follows that this court cannot assert jurisdiction, unless a particular case falls clearly within one of the exceptions enumerated; that is to say, unless we plainly see that we have jurisdiction of a particular case, we must conclude that the matter is one for the supervision of the court of civil appeals."

It results, therefore, that this case will be transferred to the court of civil appeals.