WILLIFORD et al. v. SIMPSON. (No. 502.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 17, 1919. Rehearing Denied Jan. 7, 1920.)

1. APPEAL AND ERROR ⊚⟿733 — ASSIGNMENT THAT JUDGMENT IS CONTRARY TO LAW AND EVIDENCE TOO GENERAL.

An assignment of error complaining of a judgment on the ground that it was contrary to the law and the evidence was too general to constitute any assignment of error at all.

2. HUSBAND AND WIFE ⊚⟿274(4)—SURVIVING HUSBAND'S REPUDIATION OF INTEREST OF HEIRS IN COMMUNITY PROPERTY UNNECESSARY TO START LIMITATIONS RUNNING.

Where wife dies, and husband takes possession of community property, after the expiration of a reasonable time for payment of community debts an action may be brought by the heirs of the deceased wife for their interest, and limitations then begins to run without the surviving husband's expressly repudiating any claim on the part of the heirs.

3. LIMITATION OF ACTIONS ⊚⟿197(2)—FINDING OF NO EXPRESS TRUST SUSTAINED BY EVIDENCE.

In an action by heirs against the husband of deceased to recover an interest in community property, a finding that defendant had not held the property in question under an express trust thereby preventing limitations from running held supported by the evidence.

4. LIMITATION OF ACTIONS ⊚⟿103(2)—REPUDIATION OF EXPRESS TRUST NECESSARY TO START LIMITATIONS RUNNING.

If, when wife died, husband took possession of community property and held it under an express trust, limitations did not begin to run as against the heirs of the deceased until there was an express repudiation of interest or claim in the heirs.

5. APPEAL AND ERROR ⊚⟿994(3)—CREDIBILITY OF WITNESSES FOR TRIAL COURT.

In the absence of a jury the credibility of the witnesses is a matter for the trial court, and not the appellate court.

6. HUSBAND. AND WIFE ⊚⟿273(4)—SURVIVOR ENTITLED TO REIMBURSEMENT FROM COMMUNITY PROPERTY FOR PAYMENT OF COMMUNITY DEBTS.

Where wife dies and husband pays community debts, he is entitled to be reimbursed out of the community estate.

Appeal from District Court, Hardin County; J. Llewellyn, Judge.

Suit by Nancy Jane Williford and others against George W. Simpson. Judgment for defendant, and plaintiffs appeal. Affirmed.

Collins & Morris, of Beaumont, for appellants.

D. F. Singleton, of Kountze, for appellee.

HIGHTOWER, C. J. Appellants, as plaintiffs below, filed this suit against appellee, as defendant, in the district court of Hardin county on the 27th day of May, 1918, and the result was a judgment in favor of the appellee on the 15th of January, 1919. Since there is no contention in this court relative to the pleadings of the parties below, it is unnecessary to make a detailed statement of the pleadings, and it will suffice to say that appellants claimed that, as heirs of Mary Jane Simpson, deceased, they were entitled to recover of appellee the title and possession of a certain number of cattle and hogs, and to have partition thereof between themselves and appellee.

Some of the appellants are the children of Mary Jane Simpson, deceased, and some of them are her grandchildren. Appellee, George W. Simpson, and Mary Jane Simpson, deceased, were husband and wife, and appellee is the father of some of the appellants and grandfather of the others. Mary Jane Simpson departed this life on January 10, 1895. At the date of her death four children survived her, namely, W. R. Simpson, known as Riley Simpson, Nancy Jane Williford, Angeline Simpson, and Mrs. Victoria Wilkerson, who was the daughter of Mary Jane Simpson by a former husband. W. R.

Simpson, a son, at the date of his mother's death was about 22 years of age, and Nancy Jane, a daughter, was about 18 years of age, and Angeline was 2 or 3 years younger than Nancy Jane, and, as said before, Mrs. Wilkerson was then a married woman. Nancy Jane married Thomas Williford about 3 years after her mother's death, and Angeline married shortly thereafter. W. R. Simpson, at the time this suit was filed, was dead, and his wife, Mrs. Sallie Simpson, was a party plaintiff as next friend of the minor children of herself and W. R. Simpson.

Appellants alleged, substantially, that at the date of the death of Mary Jane Simpson there was a. community estate owned by her and appellee consisting, among other things, of a considerable number of cattle and hogs, which at the date of the filing of this suit had increased to the extent that there were then about 150 head of cattle and also about 150 hogs; that the cattle are worth in the aggregate about $2,000, and the hogs about $1,000. The petition further stated in detail the distributive interest in this stock claimed by each plaintiff. They further alleged also that appellee about February, 1917, had sold about $400 worth of hogs belonging to said community estate, and that in April, 1918, he had sold about 21 head of cattle belonging to said estate, which were of the value of about $26 per head, and that since the filing of this suit appellee had also sold about $100 worth of pork, which came from hogs belonging to said estate, and appellants prayed for partition of said estate, and that appellee be required to account to them for their respective shares in said stock belonging to the estate, and be required in such partition to recompense them in proportion to their share of the property he had sold and disposed of either in kind or in money, and for general relief, etc.

The answer of appellee consisted of a general demurrer and certain special exceptions which are immaterial here, and by general denial, and then appellee pleaded specially that at the date of the death of Mary Jane Simpson there were community debts which were in excess of the value of the personal property owned by the community, which debts appellee had discharged and paid off, and that therefore appellants had no title or interest in any of the property sued for by them, and were not entitled to a partition thereof. Appellee also specially interposed a plea of limitation.

The cause was submitted to the trial judge without a jury, and upon conclusion of the evidence judgment was rendered in favor of the appellee upon two grounds: First, upon appellee's defense of limitation; and, second, upon the ground, as stated by the court, that at the date of the death of Mary Jane Simpson community debts were owing which were in excess of the value of the community estate on hand. at that time, and which debts had been paid and discharged by appellee.

[1] The first assignment of error found in appellants' brief complains of the judgment on the ground that it is contrary to the law and the evidence. This is too general to constitute any assignment of error at all, and really it is not insisted upon by appellants.

The second assignment of error is as follows:

"Because the undisputed evidence shows that the property in controversy in this suit is stock, cattle and hogs, raised from stock which was the property of the deceased mother of plaintiffs with defendant, and that defendant was not entitled to same on account of the payment of debts owing by said community, because, if there were debts, he paid them out of other community property, nor was he entitled to same under his plea of limitation, because he had not repudiated the rights of plaintiffs with their knowledge, and, besides the stock were upon the range all the time, and plaintiffs lived right where they ranged, and W. R. Simpson, deceased, the father of the minor plaintiffs herein and brother to the other plaintiffs, was constantly looking after and attending to said stock until his death in 1915; besides, the mark and brand of said stock was never changed, but was continued, same being the mark and brand of plaintiffs' deceased mother; therefore there were no circumstances in the case that would put the statute of limitation running against plaintiffs, because the stock were no more in possession of defendant than of plaintiffs."

The proposition under this assignment is as follows:.

"Where one spouse dies leaving property in the hands of the surviving spouse, and leaves children, the children take all the deceased spouse's interest in the property subject to the incumbrance of community debts, and no length of time will bar the children's right in said property in favor of the surviving spouse, unless he repudiate their right and interest, and bring such repudiation to their attention, he, owning a part of each particular piece or article of such property, is entitled to possession thereof, and mere acquiescence in its use by his children will not start the statute of limitation in his favor."

[2] In the case of Miller v. Miller, 34 Tex. Civ. App. 367, 78 S. W. 1085, the Court of Civil Appeals at Austin held, substantially, that after the death of the wife the husband is entitled to the possession, custody, and control of personal property belonging to the community only for such length of time as is reasonably necessary to pay all community debts, and that after the expiration of such reasonable time an action might be brought by the heirs of the deceased wife for their interest, and that limitation would begin to run without the surviving husband having expressly repudiated any claim on the part of such heirs. The Supreme Court of this state denied a writ of error in that case. The principle of law there announced is un-

questionably applicable here, and, as will be readily observed, refutes appellants' proposition above quoted, wherein it is contended that there must be an express repudiation of the interest of the heirs, and that such heirs must have known of such repudiation.

It was the contention of appellants, both below and here, that at the date of the death of Mary Jane Simpson the personal property belonging to the community consisted of about 100 head of cattle and a considerable bunch of hogs, and a number of sheep, and perhaps a pony or two. Mrs. Williford testified, substantially, that in her opinion there were something over 100 head of cattle on hand at the date of her mother's death, and that in the spring after her mother's death in January she herself milked the cows for the family, and that there were about 35 calves that spring. She is the only witness for the appellants who undertakes to state even approximately the number of cattle that were on hand at that time. She also testified, subtantially, that there was a nice bunch of hogs and several head of sheep. She could not say how many hogs, nor how many sheep, but some 45 hogs, perhaps, and a smaller number of sheep. The appellee himself positively testified that he rounded up or gathered up the cattle about the latter part of April or first of May, after his wife's death in January, and that the entire bunch of cattle at that time consisted of 31 head; that 19 of these cattle belonged to the community estate, and 12 head belonged to the three children of himself and Mary Jane Simpson, this 12 head being cattle that appellee had given the children as their own. Appellee in this connection further testified that the cattle at that time were worth on an average of $5 a head; that the 12 head of cattle belonging to the several children were taken by them when they married and left the home; that, as to the 19 head of cattle on hand at the death of Mary Jane Simpson, he had had their exclusive possession, control, and management ever since her death, and he had claimed them as his own; that he had not recognized any claim of any of appellants to any portion of such cattle; and that in fact no claim had been asserted by any of them to any of such cattle. He also testified, substantially, that he had never consulted any of the appellants with reference to the management and control of such cattle or their increase, and that he had sold and disposed of same openly as his own property during the entire period of time since Mary Jane Simpson's death and up to the filing of this suit. Appellee further testified that there were about 45 head of hogs on hand at the time of Mary Jane Simpson's death, and about 18 head of sheep and 2 ponies, one of the value of $25, and the other of the value of $35; that the hogs were worth at that time about $1 a head, and the sheep

217 S.W.—13

about $1 a head. According to his testimony, he had exclusive possession, control, and management of the hogs and sheep and ponies, and handled them and disposed of them just as he did the cattle, recognizing no claim or interest in any of the appellants thereto, and that no demand or claim in any of such property, so far as he knew, had ever been asserted by any of the appellants until just a short time prior to the filing of this suit. There were several witnesses introduced by appellee, perhaps three or four, who testified, substantially, to the effect that they had known appellee for many years, and especially had known him intimately since the death of Mary Jane Simpson in 1895, and that they had never known any claim to be asserted by any of the appellants in this case to any of the stock in question, but that, on the contrary, appellee claimed such stock as his own, and managed it and controlled and dispose of it as such, each and every year practically, since the death of Mary Jane Simpson.

[3, 4] It is true, as claimed by appellants' counsel in this case, that Mrs. Williford tesified to facts which, if true, would show perhaps that appellee held the stock in question under an express trust, but appellee's testimony, considered as a whole, was sufficient to warrant the finding of the court, if he believed it to be true, to the effect that there was no such express trust, and this, of course, raised only a question of fact for the trial judge's determination. Now, if an express trust had been established by undisputed evidence, then we agree with appellants' counsel in his contention that there would have had to be a repudiation of such trust by appellee and notice of such repudiation given to appellants before the statute of limitation would be put in operation, but, in the absence of any such trust, it was not required that there should be any express repudiation of interest or claim in appellants. It being undisputed in the evidence that Mary Jane Simpson died in January, 1895, and that this suit was not filed until May, 1918, and the evidence being sufficient to show, if given credence, that during all of such period of time intervening appellee has had exclusive possession, control, and management of the stock in question, and claiming them, and there being no claim of disabilities, such as minority or coverture, it must be held that the trial court's judgment in favor of appellee on his plea of limitation should be sustained, and such conclusion alone must result in the affirmance of the judgment. See, also, Albrecht v. Albrecht, 35 S. W. 1076; Cochran v. Sonnen, 26 S. W. 526; Tinnen v. Mebane, 10 Tex. 246, 60 Am. Dec. 205; Wingate v. Wingate, 11 Tex. 430; Kennedy v. Baker, 59 Tex. 150; R. S. arts. 5687, 5690; Johnson v. Johnson, 206 S. W. 369.

Our conclusion thus far would be all that is necessary to a disposition of this appeal, but we think that appellants are wrong in their contention that there was no basis in the evidence for the trial court's conclusion that the amount of personal property on hand at the time of Mary Jane Simpson's death was less in value than the aggregate of the community debts at that time, and that appellee had paid and discharged such debts, and that therefore appellants were not entitled to recover in this suit.

[5, 6] Without discussing this feature of the case in detail, we will say that in our opinion, the trial court being the judge of the credibility of the witnesses, and there being no jury, all questions of fact being for his determination, the evidence was such as to justify his conclusion that the value of the personal property belonging to the estate at the time of Mary Jane's death was considerably less than the community debts then owing, and that appellee paid and discharged such debts, and was entitled to be reimbursed out of such community estate, and that his judgment on that theory of the case should also be affirmed.

Finding no error, the judgment of the trial court is in all things affirmed; and it will be so ordered.