**HAND et al. v. ERRINGTON et al.**
(No. 9555.)

(Court of Civil Appeals of Texas. Fort Worth. April 2, 1921. Rehearing Denied May 14, 1921.)

**1. Husband and wife** ⊗⟞273(9)—**Existence of community debts presumed more than 30 years after surviving husband's sale.**

Where a daughter, more than 30 years after her mother's death, sued her father to recover an interest in land purchased by him with the proceeds of community property sold by him

following the mother's death, it will be presumed that there were community debts existing at the time of the sale.

**2. Husband and wife** ⊗⟞273(9)—**Existence of community debts empowers surviving husband to sell community estate.**

Existence of community debts on wife's death confers upon the surviving husband the power to sell the community estate and to pass good title thereto.

**3. Trusts** ⊗⟞105—**Land purchased by surviving husband with proceeds of sale of community estate held impressed with constructive trust in favor of minor child.**

On the sale of the community estate by the surviving husband, following the wife's death, under the power to dispose of the community estate by reason of the existence of community debts, the sale passed the title of a minor child, and the proceeds of the sale and land purchased therewith became impressed with a constructive trust in favor of the child.

**4. Compromise and settlement** ⊗⟞19(1) — **Daughter held not estopped from claiming interest in lands purchased by father with proceeds of sale of community estate.**

Where surviving husband did not inform daughter that on wife's death he had sold the community estate and invested the proceeds in the purchase of land, and the daughter, without notice thereof, in consideration of advances, conveyed to her father and his second wife any interest claimed by her in the estate of her mother for the purpose of freeing the lands, held by father, of any controversy between the daughter, the father, and his second wife, and children born of the second marriage, such settlement did not estop the daughter from suing to recover her interest in lands purchased by father with proceeds of the sale of the community estate.

**5. Limitation of actions** ⊗⟞100(7)—**Daughter held not estopped by limitations from suing father for interest in land purchased with proceeds of the sale of community estate.**

Where a father did not inform his daughter of the sale by him of the community estate following the mother's death and the purchase of lands with the proceeds thereof, and the daughter had no knowledge that a constructive trust was impressed on such land in her favor until a short time prior to the institution of a suit against her father to recover such interest, she was not precluded from prosecuting such suit by limitations, since the failure of the father, in whom she reposed confidence and trust, to notify her of her interest, constituted constructive fraud arresting the statute of limitations.

**6. Husband and wife** ⊗⟞248½—**Property purchased by husband before marriage, but conveyed after marriage, held "claimed" by husband before marriage making such property husband's separate property.**

Where the husband had, prior to marriage, purchased land by parol contract and purchased from squatters improvements made thereon, the land was not a part of the com-

munity estate, as between the husband and daughter, following the wife's death, under Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4622, making property owned or "claimed" by husband before marriage his separate property, though the formal conveyance was not made until after the marriage; such land having been owned or "claimed" by the husband before marriage within such statutes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Claim.]

**7. Husband and wife ☞262(2)—Husband has burden of proving separate character of land where deed was delivered during marriage relation.**

Husband claiming land to be separate property notwithstanding delivery of deed during the marriage relation under Vernon's Sayles' Ann. Civ. St. 1914, art. 4621, making property owned or claimed by husband before the marriage his separate property, has the burden of proving the separate character of the land.

On Motion for Rehearing.

**8. Husband and wife ☞264—Evidence held to show that property purchased by husband during marriage relation was separate property.**

Evidence *held* to support finding that land purchased by husband after marriage with the proceeds of the sale of cattle was separate and not community property.

Appeal from District Court, Stephens County; J. R. Warren, Judge.

Suit by May Hand Errington and husband against J. J. Hand and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

W. J. Oxford, John Hancock, and W. B. Powell, all of Fort Worth, for appellants. Miller & Miller, of Ft. Worth, and Frank H. Booth, of San Antonio, for appellees.

CONNER, C. J. The appellee May Hand Errington, joined by her husband, instituted this suit against her father, J. J. Hand, his present wife, Emma Hand, the Texas Pacific Coal & Oil Company, the Prairie Oil & Gas Company, and William Bell, for the recovery of an undivided one-half interest in eight separate tracts of land described in her petition. She alleged that she was the sole heir of her mother, Texana Hand, a former wife of J. J. Hand, and that the lands described either belonged to the community estate of her father and mother or had been purchased by her father with the proceeds of said community estate. She prayed for a recovery of an undivided one-half interest in the lands, or in the alternative, for a judgment against J. J. Hand in such sum as would compensate her for one-half of said property should it be found that Hand had so disposed of the same as to prevent a recovery.

The defendant Hand and wife answered by a plea of general denial and not guilty, and specially alleged that the lands described in plaintiff's petition belonged to the separate estate of J. J. Hand, and further pleaded the statute of limitation and settlement with the appellee, as a result of which she had duly parted with whatever interest she may have ever had in the community estate of her mother.

Plaintiff dismissed her suit as against the Prairie Oil & Gas Company and William Bell, and the Texas Pacific Coal & Oil Company answered to the effect that it had secured mineral leases from J. J. Hand and wife upon certain of the lands without notice of the plaintiff's equity, if any, and also pleaded the statute of limitation.

The case was submitted to a jury upon special issues, upon which a judgment was rendered in favor of appellee against J. J. Hand for the sum of $23,036.36, and in favor of the Texas Pacific Coal & Oil Company.

The judgment is based on findings of the jury to the effect that appellee had an undivided one twenty-second interest in three of the eight surveys of land in which she alleged she had an undivided one-half interest, and upon further findings that the value of such one twenty-second interest, which had been sold to an innocent purchaser without notice of appellee's equity, was in the amount of the judgment.

Appellant, by his assignments of error, assails appellee's right to recover anything, as will hereinafter be made to appear. But he makes no attack upon the findings of the jury fixing the extent of her right, nor of the method adopted of compensating her therefor, which seems to be in accord with the rule announced in Boothe v. Fiest, 80 Tex. 141, 15 S. W. 799; Silliman v. Gano, 90 Tex. 637, 39 S. W. 559, 40 S. W. 391. We therefore address ourselves to the inquiry of whether appellee had any right in the lands described in her petition.

Appellant denied and defended on the grounds: First, that all of the lands were at all times owned and possessed by him in his own separate right; and, second, that if appellee ever had an interest it had been already conveyed to appellant by a deed from appellee, joined by her husband, on the —— day of June, 1903; and, third, that her right had long since been barred by limitation. The contention that appellee at no time had an interest in any of the land in controversy is based upon evidence and findings to the effect that at the death of appellee's mother the community estate of the deceased and J. J. Hand consisted only of about 20 calves, dropped in the year 1885; that said community cattle were retained and commingled with about 250 stock cattle held and owned by J. J. Hand in his own right and prior to the date of his marriage with appellee's

mother, which was on May 25, 1884; that the deceased died intestate, and there had been no community or other administration of her estate; that appellant, after his said wife's death, continued to manage, control, and dispose of the cattle as his own, without distinction between the separate and community rights mentioned; and that the lands in which the jury found that appellee had an interest had been purchased out of the proceeds arising from sales of the cattle.

Appellant's insistence is that, inasmuch as there was no administration and no community debts shown to exist, the legal title to the community interest of appellee's mother passed to appellee at the time of the death of her mother; that in reference thereto no trust relation existed between appellant and appellee; and that hence, when appellant sold the community cattle as he did, appellee's title and right did not pass, and her remedy was against the purchaser, to recover the property, or, if sold to an innocent purchaser for value, to recover of J. J. Hand the value of the interest so sold, but that she had no interest or right to the proceeds of such sales, which, it is insisted, became the personal property of the appellant and gave to him the same character of right in the lands purchased therewith.

Appellant cites numerous authorities in support of the foregoing contentions, including article 2469, Rev. Statutes; Dickerson v. Abnenathy, 1 Posey, Unrep. Cas. 107; Miller v. Miller, 34 Tex. Civ. App. 367, 78 S. W. 1085; Wingo v. Rudder, 103 Tex. 150, 124 S. W. 899; Griffin v. McKinney, 25 Tex. Civ. App. 432, 62 S. W. 78; Williford v. Simpson, 217 S. W. 191; Booth v. Clark, 34 Tex. Civ. App. 315, 78 S. W. 398; Arnold v. Ellis, 20 Tex. Civ. App. 262, 48 S. W. 883; Smalley v. Paine, 62 Tex. Civ. App. 52, 130 S. W. 743.

[1-3] While the above authorities have been pressed upon us by able counsel and may seem to support appellant's contentions, we think they are distinguishable, in that in those cases it affirmatively appeared that there were neither community debts nor administration; and we have concluded that inasmuch as J. J. Hand assumed the authority to sell the community property after the death of his wife, which occurred on the 15th day of February, 1886, the power to do so and to pass full title should be implied. Thirty years or more had passed since the death of appellee's mother and notwithstanding the fact that the evidence fails to so show directly, we should, after such lapse of time, presume the existence of community debts, which under a long line of our decisions confers power upon the surviving husband to dispose of the community estate and pass good title thereto. Harrison v. McMurray, 71 Tex. 128, 8 S. W. 612; Williams v. Conger, 49 Tex. 582; Johnson v. Timmons,

50 Tex. 521; Johnson v. Harrison, 48 Tex. 257; Moody v. Butler, 63 Tex. 210; Simpson v. Brotherton, 62 Tex. 170. This presumption is strengthened by the fact appearing in the record that appellant testified on the trial and failed to deny the existence of community debts, although he of all persons most probably knew whether or not the fact existed. Such failure justifies an inference that there were community debts and that he therefore had the power to sell as he did. Mitchell v. Napier, 22 Tex. 120. If so, his sale passed the title of his minor child, and the proceeds of such sale became impressed with a constructive trust which followed such proceeds into the lands in which they were invested. Oaks v. West, 64 S. W. 1033; Pearce v. Dyess, 45 Tex. Civ. App. 406, 101 S. W. 549, writ refused; Hutchins v. Wilson, 141 Tenn. 297, 210 S. W. 155.

In Oaks v. West, is was said, quoting from the headnotes:

"Where, on the death of a wife, her husband sells the community property and uses more than one-half of the proceeds to pay his individual debt, the balance belongs to her heirs, and property purchased therewith is held in trust for them."

In Pearce v. Dyess, supra, the children of Mrs. Pearce, by a deceased husband, sued her and her second husband for an undivided one-half interest in three separate tracts of land. The suit was based upon the ground that these lands had been purchased by the second husband, taking the deeds in his own name with the proceeds of the community property belonging to the first marriage. It was alleged that such investment created a resulting trust in the land in favor of the plaintiffs, the children of the first marriage. This view was adopted by the court, and the judgment in favor of the plaintiffs was accordingly affirmed. The court cited a number of authorities to the effect that where property is purchased and the conveyance of the legal title is taken in the name of one person, while the purchase price was paid by another person, a trust at once results in favor of the person who paid the price, or whose funds were used in payment thereof. We think it must be held, therefore that, under the undisputed facts and unassailed findings of the jury, to the extent of the one twenty-second interest appellant held the legal title to the three surveys specified in the verdict of the jury in trust for appellee.

[4, 5] A further obstacle to appellee's recovery, however, is presented under appellant's pleas of settlement and of limitation. The facts relating to these subjects are, briefly presented, that the mother of appellee, as before stated, died on the 15th day of February, 1886, when appellee was a little over four weeks old. Appellant placed appellee with a relative, with whom she lived

until her marriage, on June 21, 1903. During these intervening years the relations between appellant and appellee, as indeed throughout the trial, appear to have been cordial; appellee frequently visited the home of her father, but there was never any communication between them relative to the extent of her mother's interest in the property held by her father. During those years appellant paid appellee yearly the sum of $10, as interest, and at the date of her marriage $110, as her interest in her mother's separate estate. During the year 1917 appellant, in the way of advancements to appellee, paid to her in money, mules, etc., about $1,880, in consideration of which appellee, joined by her husband, executed and delivered to J. J. Hand and wife, Emma Hand, a general warranty deed conveying to them all of the "right, title, and interest claimed in the estate" which appellee had in and to the surveys of land involved in this suit. The evidence tends to show that in effecting this settlement the purpose of Hand was, in the event of his death, to free all of the lands held by him of any controversy between appellee, the daughter of his first wife, and his second wife and the 11 children born of the second marriage; Hand's avowed purpose being to have each of the children share alike in the property, which was then valued at $10 per acre. Appellee had no knowledge of any other interest she had or ever would have in the lands in controversy; appellant giving her no information on the subject. Her community interest, as further found by the jury, was not disclosed by appellant and not ascertained by appellee until a short time prior to the institution of this suit, and it is insisted in behalf of appellee that the silence of appellant in respect to the existence of community property of the first marriage and of the investment of the proceeds thereof in the lands in controversy and of appellee's right thus arising amounts to such fraud as arrested the statute of limitation and authorized a court of equity to disregard the terms of the conveyance last mentioned, and we think these contentions must be sustained. It is not contended that appellant was guilty of actual fraud; the evidence indicates that he at all times supposed and acted under the belief that all of the cattle held by him at the date of the death of his first wife belonged to him, and that there was no community estate; but we think he must be held to a knowledge of the law of the undisputed fact that there was a small community estate. It must be held that appellee's interest therein was held in trust for her benefit, and he must be affected, as a matter of law, with knowledge that when the proceeds of such community property was invested in lands afterwards purchased by him appellee's equity yet remained, and that she

was entitled to her pro rata interest therein. With such knowledge, it became the duty of appellant to bring home to appellee notice of a repudiation of the trust, if he so intended, or to fully inform her of her right in the matter. Appellant was the father and natural guardian of appellee; the relations between them were necessarily confidential, and confidence and trust in her father was naturally reposed and authorized, not only by the law but by circumstances shown in the evidence. In Hickman v. Stewart, 69 Tex. 255, 5 S. W. 833, it is said:

Where a special relation of trust and confidence (such as parent and child) exists and one party, having knowledge of material facts, contracts with the other without disclosing such knowledge, the mere silence, under the circumstances, becomes fraudulent concealment.

In Varner v. Carson, 59 Tex. 303, it is said:

When a person occupying a peculiar relation of trust toward another possesses exclusive information concerning the rights of that other to property and makes a contract with him for the property without disclosing his actual knowledge, the contract may be rescinded by the other.

In Boren v. Boren, 38 Tex. Civ. App. 139, 85 S. W. 48, it is said:

A trustee or executor who purchases the estate from the heir must pay therefor full, fair, and adequate consideration, and if there be any concealment as to the real value of the property or a false or fraudulent representation as to the value thereof, the sale will be set aside.

See, also, Saufley v. Jackson, 16 Tex. 580; Pitman v. Holmes, 34 Tex. Civ. App. 485, 78 S. W. 961; Elliott on Contracts, § 123 et seq.

We accordingly conclude that appellant's assignments of error and several propositions thereunder must be overruled, and for the reasons stated the judgment in favor of appellee is affirmed.

Appellee, however, presents several cross-assignments of error, in which she assails the finding of the jury to the effect that the 640-acre survey in the name of Phillip Leaman and the 160-acre survey in the name of W. R. Stoneham were the separate property of appellant Hand. The evidence relating to the Leaman survey is substantially as follows: That in the year 1882, some two years prior to his marriage with the mother of appellee, appellant orally contracted for the Phillip Leaman survey, paying part of the consideration, and took possession thereof. At the time, he purchased several improvements made on the survey by some squatters, but formal written conveyance from the owner of the survey was not made and delivered to Hand until November 12, 1884, during the existence of the first marriage. Appellee insists that as it appears that the contract for the purchase of this survey

was by parol, and that nothing more was done than a payment of part of the consideration and a delivery made of possession, the contract was not an enforceable one under our statutes of fraud, and title in Hand, did not actually vest until the delivery of the deed in November, 1884.

Article 4622 of Vernon's Sayles' Ann. Civ. St. 1914, so far as pertinent, reads:

"All property acquired by either the husband or wife during marriage, except that which is the separate property of either one or the other, shall be deemed the common property of the husband and wife."

Article 4621 reads, in part, as follows:

"All property, both real and personal, of the husband owned or claimed by him before marriage, and that acquired afterwards by gift, devise or descent, as also the increase of all lands thus acquired shall be his separate property."

[6, 7] Appellee's insistence is that the words "owned" or "claimed," as used in the statute last quoted, signified a legal or equitable ownership, or a legal or equitable right to demand the land, and she cites in support of this contention the following cases: Dugan v. Colville, 8 Tex. 128; Garner v. Stubblefield, 5 Tex. 552; Neatherly v. Ripley, 21 Tex. 434; Jones v. Carver, 59 Tex. 293; Ward v. Stuart, 62 Tex. 333; Ann Berta Lodge v. Leaverton, 42 Tex. 18; Altgelt v. Escalera, 51 Tex. Civ. App. 108, 110 S. W. 989; Wooldridge v. Hancock, 70 Tex. 18, 6 S. W. 818; Robertson v. Simpkins, 61 Tex. 259; Bradley v. Owsley, 74 Tex. 69, 11 S. W. 1052. The cases cited affirm the general rule that specific performance of a parol contract will not be enforced by a court of equity except in cases where it appears that the purchase money, or part thereof, has been paid and delivery of possession made under the contract, and substantial improvements in good faith have been made, and are, generally speaking, cases where specific performance was sought as against the vendor or his legal representatives. The case here, however, is not between J. J. Hand, the purchaser, and the vendor of the Leaman survey, and we are not inclined, as between appellant and appellee, to give the restricted meaning appellee insists upon to the words "owned" or "claimed," as used in article 4621 in defining the separate property of the husband. The proof fulfills the requirements of the case cited, even as against the vendor, except that instead of making the improvements Hand purchased them from the squatters. He only failed to affirmatively show that the squatters had some legal equitable right to the improvements, which consisted of two log houses, a well, and a cultivated field of 12 or 15 acres. While the burden was doubt-

less upon him, under the operation of article 4622, to show the separate character of the land, the deed having been delivered during the marriage relation, the vendor, in this instance, does not appear to have questioned the right of the squatters to the improvements or an equity in Hand, arising by reason of his purchase. On the contrary, the parol contract made by Hand, together with the delivery of possession and the purchase of improvements to free the land from the claim of the squatters, was recognized by the vendor by receiving the balance of the purchase money, which was out of the separate estate of J. J. Hand, as per the terms of the oral contract, and by executing a formal and sufficient conveyance of the survey. We think such a "claim" as Hand had at the date of his marriage, followed by conveyance as it was from the vendor, is fairly within the meaning of the term as used in the statute defining the husband's separate estate. Stiles v. Hawkins, 207 S. W. 89; Bishop v. Williams, 223 S. W. 512.

As we understand the record, however, we feel that we must sustain appellee's contention as to the Stoneham 160-acre survey. The jury found that this survey was separate property of appellant, but he has not undertaken to defend the finding, and, so far as we have been able to ascertain from the evidence, it is substantially undisputed that the purchase of this survey by Hand was in 1885, prior to the death of appellee's mother. It is true a later deed from the owner to the same land, dated April 6, 1886, was delivered to Hand shortly after the death of his wife, and it is upon this latter deed that appellant seems to predicate his contention that it was his separate property. A son of the vendor, however, testified, without contradiction, that the survey had been conveyed by his father in 1885. Appellee also offered in evidence the fact that in the trial by one J. E. Nix against J. J. Hand, in the district court of Eastland county, the defendant Hand offered in evidence the patent from the state of Texas to W. R. Stoneham, dated May 25, 1884, and a deed dated June 5, 1885, from W. R. Stoneham to J. J. Hand, and there was further evidence to the effect that the deed from Stoneham to Hand, delivered in 1886, was for the purpose of correcting the form of the prior deed made in 1885. Presumptively, therefore, by virtue of article 4622, supra, it was community property, and the burden was upon appellant to show that its purchase was wholly out of his separate estate. This burden was not discharged, and we therefore sustain appellee's objections to the findings of the jury relating to the W. R. Stoneham survey. We possibly would be authorized to reverse and render the judgment in appellee's favor as to this survey, but do not feel satisfied to do so, especially in view of the frequent and widely fluctuating

values of oil lands of the character here shown to be, and of the further fact that the jury's findings do not disclose the value of this particular survey. In the absence of such finding, we hesitate to now apply the measure of damages adopted by the court below, even if applicable in this character of suit, and no other measure has been suggested.

· We conclude that the judgment should be in all things affirmed, except in so far as it is therein decreed that the W. R. Stoneham survey of 160 acres is the separate property of the appellant J. J. Hand. As to this, the judgment is reversed and the cause remanded.

Judgment affirmed in part and reversed and remanded in part.

#### On Motion for Rehearing. ·

Both appellants and appellees have presented motions for rehearing. Both motions have been considered and both motions are overruled, except in the following particular. We think we erred in sustaining appellees' cross-assignment of error attacking the finding of the jury to the effect that the W. R. Stoneham survey was the separate property of appellant J. J. Hand. As stated in our original opinion, this finding was not defended, and our ruling was based on the fact that the evidence seemed to show that Hand acquired this survey in 1885, during the marriage relation of Hand and appellee's mother, and hence presumably community property by virtue of our statutes on the subject.

[8] On rehearing, however, our attention has been called to evidence to the effect that J. J. Hand and appellee's mother were married May 21, 1884, at which time Hand owned about 300 head of cattle; that the cows of said herd dropped their calves during February, March, April, and the first of May of each year; and that the lands in controversy were purchased with the proceeds of cattle sold. The first of the community property acquired during this marriage was the calf crop of 1884. Hand's deed to the Stoneham survey, as shown in our original opinion, was dated June 5, 1885. The evidence further shows that Hand did not sell his cattle until after they were a year old and the proceeds of the calf crop of 1884 could not have entered into the purchase of the Stoneham survey. At least, this evidence tends to so show, and we think it is sufficient to support the finding of the jury to the effect that that survey was the separate property of J. J. Hand.

We accordingly set aside our judgment remanding this cause and, for the reasons stated in our original opinion and herein, overrule all assignments of error and affirm the judgment.